IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Stifel Financial Corp.,

   Plaintiff,

v.

Michael J. Iannarino,

   Defendant.

Case No: 2:18-cv-1223

Judge Graham

Magistrate Judge Jolson

Opinion and Order

  This matter is before the Court on the motion of James Coutinho, Trustee of the Bankruptcy Estate of defendant Michael J. Iannarino, for relief from a judgment or order. *See* Fed. R. Civ. P. 60(b). The Trustee does not seek relief from the Judgment, which the Court entered in favor of plaintiff Stifel Financial Corporation on its claim that defendant had failed to repay sums loaned to him under a promissory note. Rather, the Trustee seeks relief from two prejudgment attachment orders, which he argues were void because: (1) plaintiff's affidavits in support of its motions for prejudgment attachment did not include all of the content required by Ohio statute; (2) defendant was not afforded due process, and (3) the property to be attached was not located in Ohio.

  For the reasons stated below, the Trustee's motion for relief under Rule 60(b) is denied.

**I. Background**

  Plaintiff, a Delaware corporation with its principal place of business in Missouri, brought this diversity action in 2018 against defendant, an Ohio resident who had recently been terminated from his employment with plaintiff at its Columbus, Ohio branch. Plaintiff alleged that defendant had breached a promissory note by failing to repay $450,000, which plaintiff had loaned to him as a benefit of employment. After filing suit, plaintiff moved for prejudgment attachment of funds in certain bank accounts holding the loan proceeds. Plaintiff's motion was unopposed.

  The remedy of attachment is available in federal court to the extent it is available under state law. *See* Fed. R. Civ. P. 64. Ohio law provides for prejudgment attachment on a number of grounds, including where, as was the case here, "defendant has assigned, removed, disposed of, or is about to dispose of, property, in whole or part, with the intent to defraud creditors." O.R.C. § 2715.01(A)(9).

1

To obtain an order of attachment, plaintiff is required, among other things, to submit an affidavit stating that certain conditions are true or satisfied. *See* O.R.C. § 2715.03. The affidavit is to include a statement concerning "the use to which the defendant has put the property and that the property is not exempt from attachment or execution." *Id.* at § 2715.03(E). The statement is to be made "[t]o the best of the plaintiff's knowledge, after reasonable investigation." *Id.*

Plaintiff's motion for prejudgment attachment addressed § 2715.03(E) and set forth the basis for why the property was not exempt from attachment. Although the three affidavits submitted by plaintiff did not quote the language that "the property is not exempt from attachment or execution," they did establish that the funds at issue were loan proceeds which had been deposited into personal checking and business accounts and were not exempt from attachment. *See* Heatwole Decl., ¶¶ 11, 13, 24, 25; Heatwole Decl., Exs. B, C, D, E; Rainsberg Decl., ¶¶ 5, 6; Woods Decl., ¶¶ 4, 6.

The Court granted the motion for attachment, finding that the affidavits and the evidentiary materials attached to the affidavits demonstrated that the funds were loan proceeds and not exempt property. *See* Dec. 3, 2018 Attachment Order (Doc. 16) at p. 4; *see also* O.R.C. §§ 2715.01, 2329.66.

After the Attachment Order was issued, plaintiff was able to recover $120,000 in one of the accounts but discovered that defendant had transferred other funds to accounts held at Charles Schwab & Co., which had a branch in Columbus.

Plaintiff moved the Court to amend the Attachment Order to include the Schwab accounts. Plaintiff's affidavits in support again did not expressly quote the language of § 2715.03(E). The motion itself stated that the "basis for attachment ha[d] not changed" and the affidavits supported that statement. *See* Doc. 19 at p. 5. The affidavits set forth that defendant had transferred some loan proceeds to defendant's brokerage accounts at Charles Schwab and that defendant had told plaintiff's counsel that he was using the funds to purchase shares of stock. *See* Fornshell Aff., ¶ 15.

The Court granted the motion and issued an Amended Order of Prejudgment Attachment. *See* Dec. 19, 2018 Amended Attachment Order (Doc. 20).

Defendant failed to plead or otherwise defend, and the Court granted default judgment on May 9, 2019. The Court entered Judgment for plaintiff in the amount of $330,000, plus interest, attorney's fees and costs.

Following the Judgement entry, the Court granted plaintiff's motion for an order of garnishment and notice to Charles Schwab. Schwab stated in its answer that it had frozen the funds subject to the Amended Attachment Order and was prepared to turn them over to plaintiff on the

Court's order.  The Court ordered Schwab to do so.  *See* July 2, 2019 Order (Doc. 36).  Schwab wrote a check in the amount of $234,376.66 to plaintiff on July 9, 2019.

**II.     Bankruptcy Proceeding**

On August 9, 2019, defendant filed a petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Ohio.  The Trustee initiated an adversary proceeding against Stifel on January 11, 2021.  The Trustee sought to avoid and recover the transfer that had been made from the Charles Schwab accounts to Stifel because the transfer occurred within 90 days of the filing of the bankruptcy petition.

Stifel argued that the transfer was not avoidable by the Trustee because it related back to the December 19, 2018 Amended Attachment Order.

The parties in the bankruptcy proceeding filed cross-motions for summary judgment.  One argument raised by the Trustee was that the Court's prejudgment attachment orders were void.  The Bankruptcy Court found that this Court should be the one to decide the issue, and the Trustee subsequently moved in this Court for relief from those orders.

**III.    Standard of Review**

The Trustee moves for relief under Rule 60(b)(4), Fed. R. Civ. P., which provides that a court "may relieve a party or its legal representative from a final judgment, order or proceeding" if the judgment is "void."  Subparagraph (4) of Rule 60(b) differs from the other grounds for relief available under Rule 60(b) in that the movant must establish that the judgment is a "legal nullity," rather than show mistake, newly-discovered evidence or fraud.  *See Jordon v. Gilligan*, 500 F.2d 701, 704 (6th Cir. 1974); *Shank/Balfour Beatty, a Joint Venture of M.L. Shank, Co., Balfour Beatty Constr. v. Int'l Bhd. Of Elec. Workers Loc. 99*, 497 F.3d 83, 94 (1st Cir. 2007) ("Although denial of a Rule 60(b) motion is normally reviewed for abuse of discretion, a district court has no discretion when deciding a motion brought under Rule 60(b)(4) because a judgment is either void or it is not.") (internal quotation marks omitted).

A judgment is not void "simply because it is or may have been erroneous." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) (internal quotation marks omitted).  "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id.* at 271 (citing 11 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2862, p. 331 (2d ed. 1995 and Supp. 2009)); *see also Northridge Church v. Charter Twp. of Plymouth*, 647 F.3d 606, 611 (6th Cir. 2011).

Relief under Rule 60(b)(4) is reserved for instances where the court issuing the judgment "lacked jurisdiction over the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995) (internal quotation marks omitted).

## IV. Discussion

The Trustee asserts on several occasions in his briefs that the Court was "without subject-matter jurisdiction" to enter the attachment orders. *See e.g.*, Doc. 39 at p. 6; Doc. 41 at p. 2. The Court must reject this assertion, as it is clear from the record that the parties to the suit were diverse and that amount in controversy exceeded $75,000. *See* 28 U.S.C. § 1332.

A close examination of the Trustee's briefs shows that he does not actually dispute that the requirements for diversity jurisdiction were met. Instead, his true argument is that the property to which the Court's attachment orders applied was beyond the Court's authority to reach. The Court finds that this type of argument – that the court lacked jurisdiction over the property attached – is one which, if proven true, would establish that the attachment orders were void and thus would constitute sufficient grounds for relief under Rule 60(b)(4). *Cf. Wells v. Rhodes*, 592 Fed. App'x 373, 377 (6th Cir. 2014) (grounds for relief under Rule 60(b)(4) include that the court lacked jurisdiction over the person of the defendant); *Zeeb Holdings, LLC v. Johnson*, 552 F.Supp.3d 709, 712 (N.D. Ohio 2021) (holding that the court must "have jurisdiction over the assets [plaintiffs] seek to attach"); *PCA-Corr., LLC v. Akron Healthcare LLC*, No. 1:20-CV-428, 2021 WL 1582984, at *1 (S.D. Ohio Apr. 22, 2021) (declining to issue an attachment order after finding that the court "lacks jurisdiction over the piece of property" sought to be attached).

### A. Affidavit Requirement

The primary reason why the Trustee believes that the attachment orders are void is that plaintiff's affidavits did not include an express statement that "the property is not exempt from attachment or execution." O.R.C. § 2715.03(E). The Trustee argues that strict compliance with the statute is necessary to provide a court with jurisdiction over the property.

The Court is not persuaded by the Trustee's argument. Plaintiff's affidavits did contain statements and evidentiary materials from which the Court could readily determine that the property sought to be attached constituted loan proceeds – deposited initially into bank accounts and transferred in part to brokerage accounts – which did not fall within a category of exempted property under O.R.C. § 2329.66.

4

The Trustee's argument puts form over substance. His position would require a recitation of the statutory language and reject an affidavit that contains factual statements and incorporated evidentiary materials demonstrating that the statutory requirements are satisfied. The statute requires an affidavit "which shall set forth all of the following . . . ." O.R.C. § 2715.03. The plaintiff's affidavits did in fact "set forth" the basis for why the property was not exempt.

### B.     Due Process

The Court, in finding that plaintiff complied with the statutory requirements for attachment, in no way means to downplay the importance of technical compliance. As other courts have explained, "There is no room in the statute for procedural shortcuts . . . given the significant due process concerns surrounding a prejudgment attachment of assets." *Browning v. Univ. of Findlay*, No. 3:15CV2687, 2019 WL 582351, at *2 (N.D. Ohio Feb. 13, 2019). *See also Aragonite Cap. Markets, LLC v. Dark Horse Media, LLC*, No. 1:22-CV-00222, 2022 WL 614678, at *8 (N.D. Ohio Mar. 2, 2022) ("The Court agrees with Defendants that dismissal is warranted based on Plaintiff's failure to strictly comply with the notice requirements set forth in Ohio Rev. Code § 2715.041(A).").

The Trustee contends that plaintiff's alleged noncompliance with the affidavit requirements deprived defendant of due process. The Court disagrees. The hallmarks of due process are notice and a meaningful opportunity to be heard. *Cunningham v. Blackwell*, 41 F.4th 530, 536 (6th Cir. 2022). The Ohio Supreme Court has held that in the context of prejudgment attachment, due process requires that: (1) plaintiff "furnish an appropriate bond or other security," (2) plaintiff submit an affidavit "alleging personal knowledge of specific facts forming a basis for prejudgment seizure, (3) "a judicial officer pass upon the sufficiency of the facts alleged in the affidavit," (4) there be an allowance "for dissolution of the seizure upon the posting of a bond by defendant," and (5) "an immediate right of hearing to the defendant in which plaintiff must prove that the seizure is warranted." *Peebles v. Clement*, 63 Ohio St. 2d 314, 321, 408 N.E.2d 689, 693 (1980).

Here, plaintiff was served with the complaint, the motions for prejudgment attachment, and the Court's attachment orders. *See* Docs. 8, 24. In compliance with Ohio law, plaintiff filed a praecipe with the Clerk of Court, who in turn issued a Notice that: advised defendant of the pendency of the attachment proceedings; provided a list of exempt property; told defendant how to oppose the attachment; notified him of his right to a hearing on the motion; and informed him of his right to avoid attachment by posting bond. *See* Docs. 9, 10; O.R.C. § 2715.041. Defendant was served with the Notice. Doc. 11. Defendant did not post a bond or request a hearing.

Plaintiff posted a bond and submitted affidavits containing facts forming the basis for attachment. This Court reviewed the facts alleged in the affidavit and found them to be sufficient.

Defendant also had the right to a post-attachment hearing, but he failed to appear or otherwise defend the suit. *See* O.R.C. §§ 2715.043(C), 2715.045(D).

In sum, the Court finds that defendant's right to due process was not violated.

### C. Location of the Accounts

Finally, the Trustee argues that the Court's attachment orders were void because the accounts were not located in Ohio. The Court rejects this argument as well.

Ohio's attachment statutes "do not apply to assets located outside of Ohio." *EBSCO Indus., Inc. v. Lilly*, 840 F.2d 333, 336 (6th Cir. 1988). The rule is easy to apply to tangible property: "tangible personal property of the defendant which is located outside the state cannot be reached by attachment proceedings." *QSI-Fostoria DC, LLC v. Gen. Elec. Cap. Bus. Asset Funding Corp.*, No. 3:02-CV-7466, 2005 WL 81902, at *3 (N.D. Ohio Jan. 14, 2005) (citing *Ohio Loan & Discount Co. v. Siemen*, 142 Ohio St. 384, 386-87 (1943)).

Defendant placed the loan proceeds in bank accounts, including checking and brokerage accounts. The parties struggle to point to a cohesive rule of law for intangible property. Their struggle is understandable. The "location of an intangible, especially a bank account, is a metaphysical question. By and large, bank deposits exist as electronic impulses embedded in [silicon] chips. In a sense, therefore, bank funds are both everywhere and nowhere." *Yayasan Sabah Dua Shipping SDN BHD v. Scandinavian Liquid Carriers Ltd.*, 335 F.Supp.2d 441, 448 (S.D.N.Y. 2004). And the struggle is not new. Judge Benjamin Cardozo once explained:

> The situs of intangibles is in truth a legal fiction, but there are times when justice and convenience requires that a legal situs be ascribed to them ... [citations omitted] ... At the root of the selection is generally a common sense appraisal of the requirements of justice and convenience in particular conditions.

S*evernoe Sec. Corp. v. London & Lancashire Ins. Co.*, 255 N.Y. 120, 123, 174 N.E. 299, 300 (1931).

The Trustee cites several cases involving attachment of bank accounts. However, in none of the cases did the court have occasion to craft a precise rule for determining the location of a bank account. *See Zeeb Holdings*, 552 F.Supp.3d at 713 (denying motion for attachment of Charles Schwab bank accounts where the defendant investment advisor did not reside in Ohio and where the assets belonged to defendant's clients and not to him); *PCA-Corr.*, 2021 WL 1582984, at *2 (S.D. Ohio Apr. 22, 2021) (denying motion to attach a bank account at a financial institution which had no presence in Ohio); *Aragonite Cap. Markets,* 2022 WL 614678, at *11 (denying motion to attach bank accounts at

6

financial institutions in foreign countries); *Commodigy OG Vegas Holdings, LLC v. ADM Labs*, No. 1:19-CV-01382, 2019 WL 6716457, at *2 (N.D. Ohio Dec. 10, 2019) (denying motion to attach an account at a bank which had no branches in Ohio).  *See also Concheck v. Barcroft*, No. 2:10-CV-656, 2010 WL 4117480, at *2 (S.D. Ohio Oct. 18, 2010) (Ohio's prejudgment attachment process does not apply to funds belonging to out-of-state residents).

Collectively, the cases cited by the Trustee stand for the proposition that, at a minimum, defendant must own the bank account sought to be attached and both the defendant and the financial institution must have some presence in Ohio.  Here, defendant owned the accounts subject to the Court's attachment orders, he resided in Ohio, and each of the financial institutions involved – CME Federal Credit Union, PNC Bank, and Charles Schwab – had Ohio branches and offices.

Plaintiff cites to a decision which is helpful, even if not binding.  In *Regions Equip. Fin. Corp. v. Blue Tee Corp.*, 313 F.R.D. 568, 570–71 (E.D. Mo. 2016), the court discussed the two approaches which courts have taken to attachment of bank accounts.  *See also* Kyle M. Brennan, *All Things Visible and Invisible: The Location of Intangible Property for Rule B Attachment Purposes*, 35 Miss. C. L. Rev. 240, 254–57 (2016).

The traditional rule is known as the separate entity rule.  It provides that branches of a bank are treated as separate banks for purposes of attachment of bank accounts.  *See Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50, 53 (2d Cir. 1965).  The reasoning for this rule was that:

> A branch bank is a separate and distinct business entity. . . . Not only are branch banks separate entities, but deposits made in a branch bank are payable there and there only. . . . A branch bank being separately indebted to its depositor, the existing obligation lies primarily between such branch bank and its depositor.  The conclusion follows as a necessary corollary that the debt owed by a branch finds its situs within the territorial jurisdiction of such branch.

*Id.* (quoting *Bluebird Undergarment Corp. v. Gomez*, 139 Misc. 742, 744, 249 N.Y.S. 319, 321–22 (City Ct. 1931)).

The separate entity rule has been declared to be obsolete by many authorities.  *See, e.g.*, *Acme Contracting, Ltd. v. Toltest, Inc.*, No. 07-10950, 2008 WL 4534175, at *7 (E.D. Mich. Oct. 3, 2008 ("[T]his Court concludes that such a rule is entirely obsolete in today's world of highly sophisticated and centralized banking operations."); *Marisco, Ltd. v. Am. Samoa Gov't*, 889 F.Supp.2d 1244, 1250–51 (D. Haw. 2012); Brennan, *All Things Visible and Invisible*, 35 Miss. C. L. Rev. at 256 ("Bank accounts are really electronic credits existing in favor of the holder of that bank account against the bank. . . . The

7

branch at which a customer maintains a bank account is entirely arbitrary given that funds from this account can be credited to the customer at any other branch of that bank.").

The rule commonly followed now is that funds held in a bank account are located wherever they are available to be utilized or disposed of by the account owner. *See Regions Equip.*, 313 F.R.D. at 570–71; *Boland Marine & Indus., LLC v. Bouchard Transportation Co.*, No. 1:20-CV-66-LY-ML, 2020 WL 10051743, at *6 (W.D. Tex. Feb. 28, 2020). This means that an account is located wherever the financial institution maintains a branch. *See id.*; *Acme Contracting*, 2008 WL 4534175, at *7 ("[T]he funds in TolTest's account are 'located' wherever they are available for withdrawal by TolTest. . . . Because the funds are available to TolTest at Fifth Third Bank's Michigan branches, the Court concludes that the funds are located within the boundaries of the State of Michigan for purposes of M.C.L. § 600.4011(1)."). *See also* Brennan, *All Things Visible and Invisible*, 35 Miss. C. L. Rev. at 257 ("If the jurisdiction does not follow the Separate Entity Rule, attachment can be had in any district in which the bank that maintains the defendant's account maintains a branch office.").

The Court has been unable to find any Ohio case law either adopting or rejecting the separate entity rule. Though it seems likely that Ohio courts would not follow a rule which many courts have found to be outdated, this Court need not resolve the matter. The facts presented here satisfy both the separate entity rule and the modern approach. Defendant resided in Columbus. He held accounts at three financial institutions, each of which had branches in Columbus. Whether one considers the accounts to be located at the specific branches in Columbus where defendant did business or at any branch belonging to those banks, the Court finds that the accounts were located in Ohio. Thus, in issuing the attachment orders, the Court properly exercised jurisdiction over the funds.

**V.    Conclusion**

Accordingly, the Court finds that its December 3, 2018 Attachment Order and December 19, 2018 Amended Attachment Order are not void. The Trustee's motion for relief from the judgment (Doc. 39) is DENIED.

                                                  s/ James L. Graham
                                                  JAMES L. GRAHAM
                                                  United States District Judge

DATE: January 20, 2023